OPINION OF THE COURT
Helen E. Freedman, J.
Plaintiff sues to recover the costs and incidental expenses incurred when he purchased a used 1973 Volvo from defendant, claiming that the motor vehicle was seriously defective and that defendant breached express and implied warranties.
The facts of the case are not complicated. Plaintiff, having just relocated from New Zealand to the United States, sought to purchase a used car. Responding to a notice in "Buy Lines” advertising a 1973 Volvo "In very good condition” plaintiff McGregor made a telephone inquiry and on May 16, 1975, he drove to the home of defendant Dimou in Brentwood, Long Island, accompanied by an English friend. Neither plaintiff nor his friend had any special knowledge about cars and neither had ever purchased one in the United States.
After a short test drive, plaintiff and defendant negotiated for the purchase of the vehicle. According to plaintiff, defendant, when asked, denied that the car had ever been in an accident, or that any major work had been performed. When asked why he was selling the car, defendant said he was doing it for a friend who had gone back to Greece.
Plaintiff discovered that the car could only start in reverse, which defendant attributed to an "electrical problem”. Defendant claims that the electrical problem had already been brought to plaintiff’s attention and that fact, together with readily apparent radiator and roof damage, had been considered in determining the purchase price of $3,000, somewhat below the asking price.
After completing the purchase, plaintiff drove to his home in Westchester County and took the Volvo to "Big Dee” where *758 he paid $153 for electrical work and an inspection. Plaintiff testified that he did not receive an inspection sticker, but there is evidence to the contrary.
Having retrieved the car from "Big Dee”, plaintiff then took it to Martin Motors in the Bronx for a complete inspection and evaluation. One week later, plaintiff picked up the vehicle and was told that it was seriously defective, hazardous and not repairable. Unable to convince defendant to take back the car and return the money (which defendant claimed he did not have), plaintiff retained the vehicle, for one year, driving it very infrequently. He sold it for $600, disclosing all the defects by attaching a copy of Martin’s report to the bill of sale.
Michael Pappas, the service manager of Martin’s, testified, consulting the report prepared by the employee who examined the vehicle. Said employee had been supervised by Pappas, but was no longer in the employ of Martin Motors. The report revealed that the vehicle was patently unsafe and beyond repair; the transmission was faulty, the brake lines were improperly routed, the engine was improperly aligned, the selector rods were foreshortened and angled upward, the brake pedal was out of line with the power booster and the lights were not functioning properly. The car would have been dangerous at a speed of 50 miles per hour, as the brakes might either lock or not engage and the transmission could easily bind. All of the components were angled forward and the chassis was bent. Pappas concluded, based on the report, that the car had been in a serious accident.
The testimony of Arthur Fallick, claims manager and supervisor of claims adjustors for Nationwide Mutual Insurance Company, confirmed Michael Pappas’ theory that the car had been in an accident. In 1974, the vehicle which had been driven only 2,500 miles was "totaled” in a three-car collision. Nationwide, the collision insurer, settled the case for $3,300, midway between the retail and wholesale "book value” of the car at the time of the accident. The insurer’s appraiser had estimated the cost of repairs to be $2,027 and had recommended against undertaking such extensive work. Three photographs in evidence showed that the entire front of the vehicle had been wrecked. Although the salvage value had been estimated to be about $600 to $800, the car was sold to Corona Salvage Bureau as a "junked vehicle” for a nominal sum.
Defendant Dimou, owner of a body and fender shop in *759 Queens, claimed to have purchased the vehicle from Corona Salvage Bureau in June of 1974 for $1,500 in cash. Although the transmission was cracked and the radiator was damaged, defendant stated that he believed that the frame and engine were serviceable and that the car was worth repairing. Defendant could not produce any receipts or other documents reflecting the purchase.
Defendant had the vehicle towed to his body and fender shop in South Ozone Park where he proceeded to fix it slowly. He did all of the body work himself and installed a rebuilt transmission. He also obtained an inspection sticker and then used the car himself for about a year, driving it to and from his home in Brentwood. During that period, the car put on about 10,000 miles and functioned reasonably well. Defendant testified that the car had been driven about 14,000 miles when he advertised it and that he valued his repair work at $2,000.
Defendant also noted that when McGregor initially telephoned, he did not ask about the condition of the car and that he came to Brentwood with a bill of sale ready to negotiate the sale. In addition, plaintiff asked to keep the license plates, promising to return them by mail. Dimou claimed that two weeks later, when he called to ask for his plates, McGregor made vague allegations concerning defects in the car and asked for his money back.
Dimou also admitted to having previously purchased two or three cars from Corona Salvage Bureau, and to having repaired them and sold them through "Dimou Collision”.
The question before this court is whether, under the facts as stated, defendant was justified in refusing to accept the return of the Volvo or whether plaintiff had a right to revoke his acceptance and to receive a refund. Article 2 of the Uniform Commercial Code contains provisions relating to warranties and revocation which delineate the rights and obligations of buyers and sellers. Where there are no warranties or the code does not apply, courts rely upon the common-law doctrines of fraud and misrepresentation. Both statutory and common-law theories of liability apply in the instant case.
Under the Uniform Commercial Code, merchantability is implicitly warranted in every sale involving a merchant, unless the warranty is specifically disclaimed. (Uniform Commercial Code, §§ 2-314, 2-316.) Although the vehicle at issue probably did not measure up to ordinary standards of merchantability, the evidence does not support a finding that *760 defendant is a merchant. While Dimou was, in fact, a body and fender specialist, he was not, nor did he represent himself to be, in the business of selling cars. The fact that he had repaired and sold a few other cars does not render him a used car salesman. A person making an isolated sale of goods is not a merchant within the meaning of the code. Thus, no warranty of merchantability is applicable. (Uniform Commercial Code, § 2-314, Official Comment No. 3; Siemen v Alden, 34 Ill App 3d 961; Bruce v Martin-Marietta Corp., 418 F Supp 837, affd 544 F2d 442.)
However, express warranties máy be enforced against both merchants and nonmerchants. (Uniform Commercial Code, § 2-313.) An express warranty may exist, despite the absence of the words "guarantee or warranty”, as long as there is an affirmation of fact which is made a part of the basis of the bargain. Statements made during the negotiation of the transaction are regarded as part of the description of the item. In fact, any attempt to show that an affirmation was not part of the bargain, must be supported by clear, affirmative proof.
Defendant Dimou did not deny that he specifically advertised that the car was "In very good condition,” or that he told McGregor that it had not been in a collision. A statement in an advertisement that a refrigerator was "in good condition” was held to be an express warranty and not, as was argued, a mere opinion, in Eddington v Dick (87 Misc 2d 793). In City Dodge v Gardner (232 Ga 766), the Georgia court found that a statement that a car had not been wrecked constituted an express warranty. Liability for the falsity of the declaration was not excluded by an "as is” clause.
Dimou’s statement that he was selling the car for a friend who had gone back to Greece was specifically designed to divert McGregor’s suspicion concerning possible trouble with the car. Actions by sellers to divert suspicion have been held to be misrepresentations amounting to breaches of warranty. (Beshears v SHS Motor Sales Corp., 433 SW2d 66 [Mo App].) Moreover, the buyer need not verify the accuracy of a warranty affirmation if he believes it to be true. (City Mach. & Mfg. Co. v A. D. A. & A. Mach. Corp., 4 UCC Rep Serv 461.) The court finds that both the advertisement and defendant Dimou’s statements at the time of sale regarding the condition of the car constituted express warranties.
Active concealment or failure to disclose important and *761 relevant facts also constitute common-law fraud. In recent years, courts recognizing the seller’s superior knowledge about the nature of the goods sold, have allowed buyers to recover when concealment of an important fact has misled the buyer into thinking a product was something other than what it was and where there has been clear reliance by the buyer on such representations. (Haberman v Greenspan, 82 Misc 2d 263.) "This is especially true where the external appearances are such as to lull to rest any suspicion as to the existence of the facts concealed” (p 266). Such was certainly the case here where defendant used his skill as a body fender man to restore the exterior of the car. (See, also, Luther v Bud-Jack Corp., 72 Misc 2d 924 where a jury verdict finding fraud was sustained where a car was damaged in transport and repaired by the dealer, who did not inform the buyer.)
Dimou’s testimony that he believed the car was in usable condition and that he paid $1,500 for it is neither persuasive nor even reasonable in view of all of the other testimony concerning the condition and history of the car. There is no question that he knew that the car had been in a wreck. To claim that such a vehicle was in "very good condition” and to deny that it was in an accident so distorts the truth that this court believes it to be fraud.
Turning now to the question of plaintiff’s remedy under certain circumstances, a buyer who has accepted a product and discovers that it does not conform to representations or specifications may revoke his acceptance (Uniform Commercial Code, § 2-608). If the acceptance was reasonably induced either by difficulty of discovery before acceptance or by the seller’s assurance, the defect substantially impairs the value of the goods, and the revocation occurs within a reasonable time before any substantial change in the goods had occurred, the purchaser may revoke. All of these criteria were met in the instant case. The buyer, who had no knowledge of cars and was not acquainted with a mechanic, relied on both the assurance of the seller and a short test drive. As soon as he could, the buyer took the vehicle in for further inspection, discovered substantial deficiencies in it and attempted to return it to the seller.
The court finds that McGregor acted in a timely and reasonable manner under the circumstances. In Carretta v Bud-Jack Corp. (64 Misc 2d 689), the court held that after a one-month period during which a car stalled three times and needed a *762 new motor, it was proper for the buyer to revoke his acceptance. Here, plaintiff revoked one month after purchase, having first tried on his own to have the car repaired.
Moreover, McGregor acted reasonably and mitigated damages by retaining the car for awhile, driving it only occasionally, and finally selling it for $600. McGregor’s continued possession and use of the car in no way invalidated his revocation in view of the fact that Dimou refused to acknowledge the revocation of acceptance. (See, e.g., Luther v Bud-Jack Corp., supra.)
For the foregoing reasons, the court finds that plaintiff is entitled to the cost of the car, minus the $600 realized from the subsequent sale. The court finds the other damages sought to be too speculative.
Judgment in the sum of $2,400 plus cost and disbursements. Interest from June, 1975.