**CREUSOT–LOIRE INTERNATIONAL, INC., Plaintiff,**

v.

**COPPUS ENGINEERING CORPORATION, Defendant.**

No. 82 Civ. 4251 (JMC).

United States District Court, S.D. New York.

Aug. 2, 1983.

Gruen, Muskin & Thau, New York City (Victor P. Muskin, New York City, of counsel), for plaintiff.

Solin & Breindel, P.C., New York City, Day, Berry & Howard, Boston, Mass. (Charles Donelan, Boston, Mass., Howard Breindel and Robert Aronson, New York City, of counsel), for defendant.

## MEMORANDUM AND ORDER

CANNELLA, Senior District Judge:

Plaintiff's motion for summary judgment is granted. Fed.R.Civ.P. 56.

## BACKGROUND

Plaintiff commenced this diversity action alleging breach of contract and warranty. Simply stated, in January 1979, plaintiff purchased five type DG–26 fanmix burners [the "burners"] from defendant for installation in an ammonia plant in Kutina, Yugoslavia. According to plaintiff in February 1981, before the burners were installed, it learned that serious problems developed concerning the operation of similar burners manufactured by defendant in ammonia plants in Syria and Sri Lanka. Thereafter, plaintiff claims it sought reasonable assurances from defendant that its burners would perform satisfactorily. Plaintiff asserts that defendant repudiated its contract by failing to give adequate assurances; thus, justifying plaintiff's revocation and its demand for recission. Plaintiff now moves for summary judgment contending that defendant is liable for the purchase price of the burners plus plaintiff's incidental damages.

## FACTS

Plaintiff is a wholly-owned subsidiary of Creusot-Loire, S.A. ["Creusot-Loire"], a French manufacturing and engineering concern. Creusot-Loire Enterprises

["CLE"] is a contracting subsidiary of Creusot-Loire. CLE is the project engineer for the ammonia plants in Yugoslavia and Syria. The design process engineer for all three ammonia plants—Yugoslavia, Syria and Sri Lanka—is M.V. Kellogg ["Kellogg"], an American engineering firm with affiliated offices in Europe. As design process engineer, Kellogg designated defendant's burners for the auxiliary steam boiler in all three plants.

In the fall of 1978, plaintiff sent Kellogg's burner specifications to defendant.[1] In response, defendant mailed plaintiff both technical specifications and price information on the burners. Defendant expressly warranted that the burners were capable of continuous operation using heavy fuel oil with combustion air preheated to 260° Centigrade.[2] Defendant further guaranteed that this warranty would extend for one year from the start-up of the plant but not exceeding three years from the date of shipment.[3]

After receiving several technical clarifications, on January 3, 1979 plaintiff issued a purchase order for the burners. Subsequently, the purchase order was amended on two occasions to include additional components. Plaintiff paid $175,586 for the burners and additional parts.[4] In November 1979, the burners were shipped to Yugoslavia. The Kutina plant originally was scheduled for start-up in 1981, however, for reasons not pertinent to the instant motion, the plant will not be operational until the end of 1983.

In 1981, after the burners were shipped, plaintiff became aware of operational difficulties with the burners at the Syrian and Sri Lankan ammonia plants. With respect to the Sri Lankan plant,[5] it became clear that the burners overheated when using heavy fuel oil with combustion air preheated to 316° C.[6] Moreover, as plaintiff later learned, efforts to modify the burners proved futile. Indeed, even when the operating conditions at Sri Lanka were substantially relaxed,[7] the burners still failed to function properly. In May 1981, Kellogg terminated defendant's attempts to rectify the problems with the Sri Lankan burners and replaced them with a competitor's burner which apparently satisfied all performance specifications.

In February 1981, plaintiff wrote to defendant expressing its concern that the burners purchased for Yugoslavia, like the Sri Lankan burners, would be unable to perform satisfactorily. In June 1981, defendant told plaintiff that the problems with the Syrian burners were being resolved. Defendant, however, did not inform plaintiff of the difficulties experienced in Sri Lanka. In September 1981, defendant suggested to plaintiff several modifications in the burners. These modifications were necessary to insure that the Yugoslavian operational specifications could be met. Defendant also indicated that plaintiff would be billed for these modifications.[8]

In response, plaintiff demanded proof that the burners delivered to Yugoslavia

1. *See* Plaintiff's Statement of Undisputed Facts Pursuant to Civil Rule 3(g), ¶ 19 (filed Mar. 11, 1983) [hereinafter "Plaintiff's Undisputed Facts"].

2. Affidavit of Kenneth A. Hovington, Exhibit C at 3 (filed Mar. 14, 1983) [hereinafter "Hovington Affidavit"].

3. *Id.*, Exhibit F at 2.

4. Plaintiff's Undisputed Facts, ¶ 26; Deposition of Kenneth A. Hovington at 135–37 (filed May 5, 1983) [hereinafter "Hovington Deposition"]. *See also* note 26 *infra.*

5. Hovington Affidavit, Exhibit K. Apparently there is no dispute that the specifications for the Syrian plant were less onerous than the specifications for the Sri Lankan and Yugoslavian plants because the Syrian burners used lightweight fuel without combustion air being preheated.

6. Affidavit of Donald J. Bailey, ¶ 6 (filed Mar. 14, 1983) [hereinafter "Bailey Affidavit"]; Plaintiff's Undisputed Facts, ¶ 41.

7. *See* Affidavit of Victor P. Muskin, Exhibits 11, 18, 21, 22 (filed Mar. 14, 1983) [hereinafter "Muskin Affidavit I"]; Bailey Affidavit, ¶ 6.

8. Affidavit of Marc Deane, Exhibit R (filed Apr. 4, 1983) [hereinafter "Deane Affidavit"]; Hovington Affidavit, Exhibit Q.

would satisfy the contract specifications.[9] Thereafter, on November 6, 1981, defendant informed plaintiff that it had no experience operating burners under conditions comparable with the specifications for the Yugoslavia plant.[10] Defendant suggested, however, that plaintiff consider altering the contract specifications with respect to the preheat temperature and the type of fuel. Defendant did not disclose that the same modifications proved unsuccessful in Sri Lanka.

In December 1981, after Kellogg withdrew its approval for installing defendant's burners, representatives from CLE, Kellogg and defendant met in London. At this meeting, the difficulties with the Sri Lankan burners were discussed. In addition, Kellogg informed defendant that the decision to withdraw prior approval for the Yugoslavian burners was based on the problems encountered at Sri Lanka.[11] CLE also requested that defendant take back the burners and refund the purchase price to plaintiff. Defendant declined this request. On December 15, 1981, plaintiff also demanded that defendant take back the burners.

On December 23, 1981 and again on January 13, 1982, representatives of plaintiff and defendant met in New York. At these meetings, plaintiff stated that it would accept the burners only if defendant provided contractual and financial assurances of performance. Plaintiff requested that defendant extend its contractual guarantee because of a delay in the start-up of the Yugoslavian plant and that defendant post an irrevocable letter of credit for the purchase price of the burners. Defendant re-

fused this request and plaintiff's further demand for a refund.

Defendant's correspondence and internal memoranda reveal that it was less than candid with plaintiff. For example, in May 1981 defendant knew that the modifications it would propose in September to plaintiff proved unsuccessful in Sri Lanka.[12] Moreover, after suggesting the modifications, defendant failed to tell plaintiff that the modifications met with limited success under conditions less rigorous than those specified for Yugoslavia.[13] Further, defendant's documents recognize that the representations in its technical offering were misleading because they failed to disclose that defendant had no experience with preheated Kellogg burners.[14] Finally, the documents disclose that from at least September 1981, defendant decided to stall or delay plaintiff's efforts to obtain assurances and to cajole plaintiff into purchasing burners from a competitor.[15]

## DISCUSSION

■ To grant the instant motion, the Court must be convinced, after viewing the facts and circumstances in a light most favorable to defendant, that no genuine issues exist for trial. See United States v. Potamkin Cadillac Corp., 689 F.2d 379, 381 (2d Cir.1982). Moreover, merely because a "factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party." Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir.1980) (emphasis in original). Plaintiff contends that defendant's failure to give adequate assur-

9. Hovington Affidavit, Exhibit P.

10. Id., Exhibit Q; see also Muskin Affidavit I, Exhibit 31.

11. Deposition of Peter H. Horstmann at 71–75 (filed Apr. 26, 1983) [hereinafter "Horstmann Affidavit"]; Affidavit of Victor P. Muskin, Exhibit B (filed May 5, 1983) [hereinafter "Muskin Affidavit II"].

12. Muskin Affidavit I, Exhibits 3, 6–7, 17–18.

13. See note 7 supra; Deane Affidavit, Exhibits N–Q. The telexes relied upon by defendant indicate that the Sri Lankan burners were operating (1) at 50 to 90% capacity; (2) with significant down-time for repairs and adjustments; and (3) at preheat temperatures less than that called for in the specifications. See also Bailey Affidavit, ¶ 6. There is no dispute that defendant did not make these facts known to plaintiff.

14. Muskin Affidavit I, Exhibits 31–32.

15. Id., Exhibits 20, 22; Muskin Affidavit II, Exhibits B, ¶ 9; D, ¶ 4.

ances after plaintiff learned that the burners probably could not perform as warranted constitutes a repudiation; thus, justifying plaintiff's revocation and demand for a refund. Defendant, on the other hand, argues that summary judgment is inappropriate because (1) the burners substantially conformed to contract specifications; (2) plaintiff's request for assurances was unreasonable; (3) plaintiff did not revoke its acceptance within a reasonable time; and (4) defendant needs further discovery.[16]

■ As defendant correctly observes, because the Yugoslavian burners were never installed, to establish that these burners did not conform to specifications, plaintiff must show that the Yugoslavian and Sri Lankan specifications and operating conditions were similar and that the Sri Lankan burners did not perform satisfactorily. After reviewing the record, the Court concludes that defendant has not raised a genuine question of fact in this area.

First, defendant's documents reveal the scope of the problems encountered with the Sri Lankan burners and defendant's inability to correct them.[17] Moreover, defendant's assertion that the Sri Lankan burners operated at ninety-three percent capacity does not raise a material question of fact. This capacity only was attained for a short period of time and under conditions less rigorous than that contracted for at either Sri Lanka or Yugoslavia.[18]

Second, the Court agrees with plaintiff that the operating specifications for Sri Lanka and Yugoslavia were sufficiently similar to give plaintiff reasonable grounds for insecurity. Three of defendant's employees have stated or represented that the operating conditions for the Yugoslavian and Sri Lankan plants are similar;[19] Thus, the Court finds unpersuasive defendant's sales engineer's claim that the two plants are different. While the Court recognizes that several technical differences between the two plants' specifications exist, defendant has failed to demonstrate the materiality of these differences to the determination of the instant motion. Indeed, with respect to the preheating requirement, the record shows that the burners could not perform adequately at temperatures below that required for Yugoslavia.[20]

■ Turning to defendant's claim that plaintiff's request for assurances was unreasonable, the Court notes that defendant promised to do more than just deliver the burners. The contract plainly states that defendant was obligated to provide burners which would operate under certain conditions.[21] The present record establishes that plaintiff was justified in seeking assurances that the burners were able to meet the Yugoslavian operating specifications. As the Official Comment to N.Y.U.C.C. § 2–609 (McKinney 1964) recognizes, a buyer of precision parts has reasonable grounds for insecurity "if he discovers that his seller is making defective deliveries of such parts to other buyers with similar needs." *Id.*, Comment 3. As stated previ-

---

**16.** Initially, defendant cross-moved for summary judgment or, alternatively, to add CLE as a party-plaintiff. In essence, defendant asserted that CLE was the real party-in-interest and that plaintiff suffered no damages. Further, defendant claimed that it was necessary to add CLE as a party to avoid multiple litigation. Relying on Fed.R.Civ.P. 17 and the language of the contract, plaintiff in response argued that it rather than CLE is the proper party to bring this action. In addition, plaintiff obtained an assignment from CLE for all claims it may have had against defendant. Affidavit of Victor P. Muskin, Exhibit N (filed Apr. 26, 1983). Upon receiving a copy of this assignment, defendant withdrew its motion. Neither party disputes the applicability of New York law to this action.

**17.** *See* notes 13–14 *supra.*

**18.** *See* note 7 *supra.*

**19.** *See* Hovington Affidavit, Exhibits L, O; Horstmann Deposition at 30–31, 63; Defendant's Responses to Plaintiff's First Set of Interrogatories, ¶ 6 (filed Feb. 1, 1983); *see also* Affidavit of Stanley G. Alderton, ¶ 4 (filed Mar. 14, 1983).

**20.** Muskin Affidavit I, Exhibit 21 at 2 ("combustion air temperature had to be limited to 150 deg C and they could not reach target 316 deg C, or problems mounted"); note 7 *supra.*

**21.** *See* notes 2, 3, 14 *supra;* Plaintiff's Undisputed Facts, ¶ 59.

ously, defendant's own documents indicate that the burners delivered to Sri Lanka did not conform to specifications; thus plaintiff was justified in seeking assurances from defendant. *See AMF, Inc. v. McDonald's Corp.*, 536 F.2d 1167, 1170 (7th Cir.1976); *see also United States v. Wegematic Corp.*, 360 F.2d 674, 676–77 (2d Cir. 1966).

With respect to defendant's claim that the assurances sought by plaintiff were unreasonable, the Court initially observes that after being asked for technical assurances in February, defendant did not respond until September;[22] thereby heightening plaintiff's suspicions. *See Turntables, Inc. v. Gestetner*, 52 A.D.2d 776, 777, 382 N.Y.S.2d 798, 799 (1st Dep't 1976). Further, the Court finds that the assurances later sought by plaintiff—an extension of contractual guarantee and the posting of a letter of credit—were not unreasonable in light of the circumstances. First, plaintiff's contention that its demand for a letter of credit comported with accepted international business practice is not seriously contested.[23] Second, the record demonstrates that defendant's stalling and lack of candor forced plaintiff to request security in the form of a letter of credit and an extension of the warranty. Third, while it understands that defendant bargained for a contract that included a limited warranty, in view of the strategy adopted to meet plaintiff's demand for assurances, the Court concludes that plaintiff's request to extend its warranty also was reasonable. Thus, defendant's failure to provide any assurances save its statement that the burners would work if installed, constitutes a repudiation of the contract. N.Y.U.C.C. § 2–609(4); *Louisiana Power & Light Co. v. Allegheny Ludlum Industries, Inc.*, 517 F.Supp. 1319, 1323 (E.D.La.1981).

Defendant's claim that plaintiff did not timely revoke its acceptance is also without merit. What constitutes a reasonable time for plaintiff to revoke its acceptance depends upon the nature, purpose and circumstances of the case. N.Y.U.C.C. § 1–204(2) (McKinney 1964). While case law indicates that as a matter of law revocation within the warranty period, which occurred in this case, is timely, *see White Devon Farm v. Stahl*, 88 Misc.2d 961, 965, 389 N.Y.S.2d 724, 727–28 (Sup.Ct.1976), the evidence establishes that plaintiff timely revoked its acceptance. After plaintiff sought assurances in February 1981, it did not receive an answer until September. Moreover, defendant's September response indicates that further assurances were forthcoming. Thus, it was not until November that plaintiff learned that defendant had no experience with burners operating under "Yugoslavian-like" conditions and that it was unlikely that the burners could satisfy the contract specifications. Accordingly, the Court concludes that any delay in revoking acceptance occurred because plaintiff reasonably relied on defendant's assurances that the burners would work. Moreover, it is clear that after it learned that defendant had been less than candid with its assurances, plaintiff revoked its acceptance within a reasonable time. *See McGregor v. Dimou*, 101 Misc.2d 756, 757, 422 N.Y.S.2d 806, 810 (Civ.Ct.1979). Finally, as plaintiff correctly observes, defendant has not shown that it was prejudiced by this alleged delay.

Defendant further argues that plaintiff's motion must be denied because defendant needs more discovery. Fed.R. Civ.P. 56(f). In response, plaintiff con-

---

**22.** While defendant did communicate with plaintiff before its September 8 telex, nothing in these communications can be construed as providing reasonable assurances that the Yugoslavian burners would meet contract specifications.

**23.** Defendant's reliance on paragraph seven of Peter Horstmann's affidavit to raise a question of fact in this regard is misplaced. Horstmann's affidavit does not indicate that the request for a letter of credit failed to comport with "commercial standards," rather, the affidavit indicates that defendant disputed the basis upon which plaintiff sought the letter of credit. Thus, plaintiff's claim that its demand for a letter of credit was consistent with international business dealings stands unrefuted. *See* Hovington Deposition at 175–77.

tends that defendant (1) has knowledge of all the facts and circumstances relevant to the instant motion, and (2) declined to seek the information allegedly pertinent to its defense of the instant motion during the discovery period established by the Court. Because the Court finds merit to both these arguments, the application for further discovery is denied.

The Court finds unavailing defendant's protestation that it had no knowledge of the operation of the Sri Lankan burners.[24] Similarly, defendant's claim that it has no information concerning the workings of the Yugoslavian plant or the relationship between plaintiff, CLE and Kellogg as it relates to this action is belied by defendant's own evidence.[25] Moreover, as stated previously, at least three of defendant's employees acknowledged the similarities between the Yugoslavian and Sri Lankan plants; thus, further discovery in this area is unwarranted.

Defendant's failure to seek either informally or by motion information it now claims is necessary also militates against ordering further discovery. Several avenues of discovery were available to defendant to obtain information from plaintiff, CLE or Kellogg. Defendant, however, declined to do so. Accordingly, it would be inequitable for the Court, at this time, to order further discovery. *See Lewis v. Knutson*, 699 F.2d 230, 240 (5th Cir.1983); *Paul Kadair, Inc. v. Sony Corp.*, 694 F.2d 1017, 1029–32 (5th Cir.1983).

■ Plaintiff claims that it is entitled to recover the price it paid for the burners as well as incidental damages. Plaintiff asserts that this is an appropriate measure of damages because the burners are of no value to it. Thus, plaintiff claims it is entitled to a full refund which represents the difference between the value of the burners as accepted and the value of the

burners if they met the contract specifications. *City of New York v. Pullman Inc.*, 662 F.2d 910, 916 (2d Cir.1981), *cert. denied*, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982); *see* N.Y.U.C.C. § 2–714(2) (McKinney 1964). Initially, the Court observes that defendant does not seriously dispute the *amount* of money plaintiff seeks to recover.[26] Moreover, nothing in the present record justifies a smaller award because defendant failed to replace the burners or give adequate assurances. *See Tokio Marine & Fire Insurance Co. v. McDonnell Douglas Corp.*, 617 F.2d 936, 941 (2d Cir.1980). With respect to incidental damages, it is clear that the transportation, inspection and storage costs incurred by plaintiff are recoverable. N.Y. U.C.C. § 2–715(1) (McKinney 1964). In addition, as was the case with plaintiff's other claim for damages, defendant does not dispute the amount. Accordingly, the Court concludes that plaintiff is entitled to recover damages in the sum of $242,335.58.

■ Finally, both parties request an award of attorney's fees. Plaintiff contends that it is entitled to an award of attorney's fees because the affidavits submitted in opposition to plaintiff's summary judgment motion were made in bad faith and solely for the purpose of delay. *See* Fed.R.Civ.P. 56(g). Defendant claims that its application for attorney's fees should be granted because plaintiff apparently required defendant to engage in unnecessary motion practice.[27] With respect to the latter claim, it appears that defendant demands attorney's fees because it prevailed on its motion to join CLE as a party herein. Assuming *arguendo* that defendant is entitled to make such a claim, the Court sees no basis for an award of attorney's fees because throughout this matter plaintiff has proceeded in good faith. While the Court agrees that a party may be added or

---

**24.** *See* notes 7, 11, 12 *supra*.

**25.** *See* Answer, 82 Civ. 4251 (JMC), ¶ 4 (filed Sept. 9, 1982); Hovington Affidavit, Exhibits A–D, S, U; Muskin Affidavit I, Exhibit 26.

**26.** *See* Plaintiff's Undisputed Facts, ¶ 83. Defendant initially claimed that CLE, not plaintiff, incurred the loss but did not dispute the amount sought.

**27.** *See* note 16 *supra*.

dropped at any time, the Court questions the timing of defendant's motion.[28]

■ With respect to plaintiff's application for attorney's fees, the Court exercising its discretion declines to make such an award. First, although the Court is sympathetic to the effort and expense plaintiff incurred herein, defendant's litigation strategy cannot be labelled as vexatious. Unlike *Nemeroff v. Abelson,* 704 F.2d 652 at 659–60 (2d Cir.1983), discovery in this matter was completed in a somewhat expeditious manner. Moreover, even though the Court finds defendant's arguments meritless, it does not necessarily follow that they were made in bad faith. Finally, given that plaintiff's claims are being resolved within one year of the filing of the complaint, the Court concludes that plaintiff has not been unduly prejudiced by defendant's conduct.

### CONCLUSION

In accordance with the foregoing, plaintiff's motion for summary judgment is granted. Fed.R.Civ.P. 56.

Plaintiff is awarded the sum of $242,-335.58 and shall submit a proposed Judgment forthwith because the Court finds that there is no just reason for delay. Fed.R.Civ.P. 54(b). This is done without prejudice to plaintiff seeking further incidental and consequential damages unknown at this time.

Plaintiff's and defendant's applications for attorneys' fees are denied.

SO ORDERED.

---

**28.** *See* Plaintiff's Rejoinder Memorandum in Support of Motion for Summary Judgment at 16–18 (filed May 5, 1983).