OPINION OF THE COURT
Bernard Fuchs, J.
The action is for the agreed price of goods sold and delivered. It is stipulated that about May 1985, defendant ordered 100,000 small cartons printed with defendant’s copy, in which defendant would pack its product (used to promote fingernail growth). The stipulation provides further that in June 1985, *526 plaintiff delivered 115,600 cartons at $74.20 per thousand or $7,835.52 which plaintiff billed on June 2, 1985; that defendant received the bill, paid $835.52 on account and then made no further payments.
From the testimony and exhibits, the court finds as follows. Defendant had several times ordered cartons printed with a guarantee of customer satisfaction. In 1984 defendant obtained an order from a new customer which specified a carton without the guarantee. Accordingly, defendant ordered 5,000 cartons for that customer (with the guarantee omitted).
In May 1985, defendant required more cartons for its regular trade and placed the order stipulated by the parties. Defendant’s president spoke to Al DiDomenico of plaintiff by telephone and emphasized that the order was for his “normal box”, reminding him that the previous order had been an exception. About 4 to 6 months after delivery of the order, defendant received complaints from customers and discovered that the cartons lacked the guarantee.
After several discussions and an attempt to correct the error by overprinting the boxes shipped, the parties concluded that nothing could be salvaged from the order. Defendant unsuccessfully asked permission to return the goods, refused further payment and purports to hold them for plaintiff.
The goods shipped were clearly nonconforming. To reject them effectively, however, the buyer had to act “within a reasonable time after their delivery” and “seasonably” notify the seller. (UCC 2-602 [1].) As a matter of both fact and law defendant has met neither of these requirements.
“Acceptance of goods” moreover "occurs when the buyer * * * fails to make an effective rejection * * * but * * * does not occur until the buyer has had a reasonable opportunity to inspect them”. (UCC 2-606 [1] [b].) The goods were in defendant’s possession for several months before it discovered the nonconformity. Inspection upon delivery would have been as simple as opening the shipping carton and examining the copy of one sample of the contents. There is no evidence of any impairment of defendant’s inspection opportunities. Defendant has, accordingly, accepted the goods.
Schnitzer v Lang (239 NY 1 [1924]) is not to the contrary. There, the buyer did test the first batch of goods at once and found it colorfast. He therefore received further deliveries which arrived too late, as he told the seller, for the current season and would be held for later use. When a few shirts *527 were manufactured from these goods and again test washed they were not colorfast and the seller was immediately notified. Unlike the present case, the defect in Schnitzer was latent, was discovered as soon as reasonably possible and led to prompt repudiation of the goods.
Neither is Rapol v Jahn & Son (701 F2d 1049 [2d Cir 1983]) nor La Villa Fair v Lewis Carpet Mills (219 Kan 395, 548 P2d 825 [1976]) of any assistance to defendant. The Rapol court held merely that it could not conclude as a matter of law that the nonconformity of six very bulky truck chassis frames was readily recognizable (as it is in this case) or that the buyer should have disassembled the 10-ton cargo for inspection before it reached its destination. In La Villa the industry practice was not to inspect until a purchaser was found and was ready to use the goods. Inspection, moreover, would have required the buyer to unroll a large order of carpet and search for concealed defects — a sharp contrast with the ease of inspection and patent defect in the present case.
More convincingly, defendant argues that the statutory requirement of reasonably prompt rejection must be intended to permit cure of the defect by the seller and so preserve the value of the transaction. Here the parties have established that the defect was incurable and a reasonable time for rejection should, defendant says, be more extended because the seller is not prejudiced by the delay.
Unfortunately for defendant neither the language nor the policy of the statute supports this argument. The UCC is a comprehensive scheme which allocates responsibility among the parties to a commercial transaction. It is not to be assumed that the draftsmen did not consider the consequences of an incurable defect in goods that are rejected late and the relative importance of prompt rejection in various classes of cases. Yet nothing in the statute even remotely qualifies the language already quoted when the case involves an incurable defect. On the contrary, "[w]here a tender has been accepted * * * [as here] the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller * * * or be barred from any remedy.” (UCC 2-607 [3] [a]; see, McKinney’s Cons Laws of NY, Book 1, Statutes § 74.)
The statutory policy, therefore, is that prompt rejection and seasonable notice are required regardless of whether the defect is curable and regardless of how faulty was the seller’s performance. Defendant’s argument that a seller must show it *528 is prejudiced by a delay in notice of rejection is not supported, as claimed, by Creusot-Loire Intl. v Coppus Eng’g Corp. (585 F Supp 45 [SD NY 1983]). The delay in that case was caused by the buyer’s reasonable reliance on the seller’s assurances that the burners would work. Revocation of acceptance was therefore timely. The seller’s failure to show prejudice, although mentioned, was not a ground of decision.
Finally defendant argues that if it did accept the goods it timely revoked its acceptance under UCC 2-608. This provision is patently inapplicable. Revocation of acceptance is available only when a buyer accepts nonconforming goods "(a) on the reasonable assumption that its non-conformity would be cured * * * or (b) * * * his acceptance was reasonably induced either by the difficulty of discovéry * * * or by the seller’s assurances.” Nothing in this case approaches those criteria.
Judgment for plaintiff in the amount of $7,000 with interest from July 27, 1985 and costs.