OPINION OF THE COURT Gary C. Hobbs, J. Procedural Background The plaintiff commenced this action seeking damages in the amount of $3,300 for an alleged breach of contract, and breach of express or implied warranties for the purchase and sale of a used car. The matter was tried on September 20, 2017, without a jury. During the trial, this court was able to observe the demeanor and credibility of the respective witnesses, and reviewed the parties’ respective exhibits. The plaintiff called her mother, Deborah Cumo, as a witness and this court found Mrs. Cumo’s testimony to be credible. The defendant called his girlfriend, Tara Prime, to testify. Neither plaintiff nor defendant testified.[1] Based on this court’s determination of the credibility of each witness and based on this court’s review of the testimony and exhibits submitted at the trial, the following are found to be the credible facts proved in this action. Findings of Fact The defendant and Ms. Prime sell five to nine cars per year with an average of six cars sold per year from their residence. During her testimony, Ms. Prime repeatedly referred to their sale of vehicles as a “business.” At the same time as the sale of the subject vehicle, the defendant and Ms. Prime were advertising three other vehicles for sale. On April 11, 2017, in response to a craigslist advertisement, the plaintiff and her mother went to the defendant’s residence to look at a used car being offered for sale by the defendant. The vehicle was a 2007 VW Jetta. At that time, the vehicle had approximately 154,000 driven miles. During negotiations, the defendant told the plaintiff’s mother that the car had no mechanical problems and that the car had four new tires, new brakes and a new muffler. The defendant never claimed that the vehicle was being sold in an “as is” condition. Instead, the defendant stated that the car was in good working condition, with no mechanical problems. The defendant also told Mrs. Cumo that, should the vehicle have mechanical problems, then “I will have it fixed.” The fact that the defendant promised to fix the car in the event that it had mechanical problems was confirmed by Ms. Prime’s testimony. According to Ms. Prime, when the plaintiff’s check engine light turned on, then the plaintiff should have brought the vehicle to the defendant’s preferred repair shops, either JNJ Auto Repair or Boyers Service Center, to have the vehicle repaired.[2] On April 11, 2017, the plaintiff purchased the defendant’s vehicle for $3,300 (plaintiff’s exhibit 3). While driving home, the plaintiff stopped to put gas in the vehicle. As she was pumping gas with the engine running, the car suddenly stalled. The defendant asserts that the plaintiff caused the vehicle to stall by filling the car with gas with the engine running, but provided no testimony or evidence to that effect.[3] The defendant, who was riding in Mrs. Cumo’s vehicle and following the plaintiff, saw the vehicle stalled at the gas station and he was able to get the vehicle started. While en route to her home, the vehicle’s check engine light suddenly came on. The plaintiff’s mother contacted the defendant to have the vehicle repaired, as promised by the defendant. Initially, the defendant said that the plaintiff could have the car repaired at either JNJ Auto Repair or Boyers Service Center. However, according to the testimony of Mrs. Cumo, which this court accepts as credible, the defendant then said that the plaintiff would have to pay for any repairs. When Mrs. Cumo attempted to contact the defendant further to obtain the repairs, the defendant stopped taking calls from the plaintiff’s mother. The plaintiff’s father examined the car, and Mrs. Cumo testified that they discovered that the muffler and tires were not new as represented by the defendant, and that the muffler was merely patched. The plaintiff had the vehicle examined at Midas (plaintiff’s exhibit 2). According to the “Visual Courtesy Check” conducted by Midas, the vehicle’s exhaust system was leaking and rattling, and needed repair from the headers back. Each of the tires had a tread depth of 4/32 inch and repair was suggested. The brake pad sensor was not plugged in. The steering system was loose and required repair. The left front CV axle and left front and left rear wheel bearings needed repair. The plaintiff purchased parts to perform the repairs suggested by Midas from Advance Auto Parts, and the plaintiffs father installed the parts. The purchased parts included a front and rear wheel bearing and hub assembly; a CV axle shaft assembly for the front left; a muffler, pipes and resonator; and an oxygen sensor. The total cost of the parts was $909.94, with the cost of the oxygen sensor being $89.99 (plaintiff’s exhibit l).[4] The tires have not been replaced, and no evidence was submitted on the cost to replace the tires. The plaintiff asserts that the defendant breached his express and implied warranties to her regarding the condition of the 2007 Volkswagen Jetta. The defendant asserts that he is not engaged in the business of selling cars and that the plaintiff purchased the vehicle in an “as is” condition without any express or implied warranties. Conclusions of Law In a small claims action the court is required to “do substantial justice between the parties according to the rules of substantive law.” (Williams v Roper, 269 AD2d 125, 126 [1st Dept 2000], citing NY City Civ Ct Act § 1804; Scaringe v Holstein, 103 AD2d 880, 880 [3d Dept 1984].) In the present case, contrary to the defendant’s assertion, the defendant and Ms. Prime are used car dealers and are engaged in the business of selling used cars. (Vehicle and Traffic Law § 415 [1] [a].) More specifically, Vehicle and Traffic Law § 415 (1) (a) provides that any “person who sells, or offers for sale more than five motor vehicles, motorcycles or trailers in any calendar year or who displays or permits the display of three or more motor vehicles, motorcycles or trailers for sale at any one time or within any one calendar month upon premises owned or controlled by him or her, if such vehicles were purchased, acquired or otherwise obtained by such person for the purpose of resale, will be regarded as a dealer. ” (Emphasis added.) Based on the testimony of the defendant’s own witness, Ms. Prime, the defendant and Ms. Prime are used car dealers. They admittedly sell five to nine cars per year, with an average of six cars sold per year. Ms. Prime repeatedly referred to their sale of vehicles as a “business.” The defendant also had three other vehicles for sale in April of 2017, when the plaintiff was negotiating to purchase the subject vehicle. Both new and used cars carry an implied warranty of merchantability, where the vehicle is purchased from a dealer or merchant. (See UCC 2-314, 2-318; Denny v Ford Motor Co., 87 NY2d 248 [1995].) A dealer may disclaim liability under an implied warranty of merchantability, but only if the disclaimer is written and conspicuous. (See UCC 2-316; Natale v Martin Volkswagen, Inc., 92 Misc 2d 1046 [Utica City Ct 1978] [where the disclaimer which set forth words “as is” was stamped over other printed material in such a way as to obscure those words and made it difficult, if not impossible to read, the disclaimer was ineffective].) Here, the defendant never disclaimed the implied warranty of merchantability. The vehicle was not disclosed as being sold in an “as is” condition. As a result, an implied warranty of merchantability was in full force and effect when the plaintiff purchased the car from the defendant. Furthermore, used car buyers are protected by Vehicle and Traffic Law § 417, which requires used car dealers to inspect vehicles and deliver a certificate to buyers stating that the vehicle is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery. This “warranty of serviceability” goes beyond the implied warranties of the Uniform Commercial Code. It is a statutory warranty that cannot be waived. (See Natale v Martin Volkswagen, Inc., 92 Misc 2d 1046, 1050 [Utica City Ct 1978]; Dato v Vatland, 36 Misc 2d 636 [Nassau Dist Ct 1962]; Winsey v Spitzer Motor Sales, 12 Misc 2d 56 [App Term, 1st Dept 1958].) Thus, the warranty of serviceability under Vehicle and Traffic Law § 417 is a non-waiveable, non-disclaimable, indefinite warranty of serviceability which has been liberally construed. (See Barilla v Gunn Buick-Cadillac-GMC, 139 Misc 2d 496 [Oswego City Ct 1988]; Ritchie v Empire Ford Sales, NYLJ, Nov. 7, 1996 at 30, col 3 [Yonkers City Ct 1996]; Williams v Planet Motor Car, 190 Misc 2d 22, 32 [Civ Ct, Kings County 2001].) Finally, it is well settled that express warranties may be enforced against both merchants and non-merchants. (UCC 2-313.) An express warranty may exist, despite the absence of the words “guarantee or warranty,” provided that there is an affirmation of fact which is made a part of the basis of the bargain. Statements made during the negotiation of the transaction are regarded as part of the description of the item. In fact, any attempt to show that an affirmation was not part of the bargain must be supported by clear, affirmative proof. (See McGregor v Dimou, 101 Misc 2d 756, 760 [Civ Ct, NY County 1979].) In the present case, the defendant made certain express warranties to the plaintiff and the plaintiffs mother. More specifically, the defendant told the plaintiff and her mother that the car was in good operating condition; that the muffler, brakes and tires were all new; and that he would fix the car, if they found mechanical problems. The defendant’s statement that the vehicle was in good operating condition with new brakes, muffler and tires constitutes an express warranty, rather than a mere opinion. (See Eddington v Dick, 87 Misc 2d 793 [Geneva City Ct 1976]; Mazzuocola v Thunderbird Prods. Corp., 1995 WL 311397, 1995 US Dist LEXIS 6883 [ED NY, May 16, 1995, No. 90-CV-0405 (AKR)]; McGregor v Dimou, 101 Misc 2d 756, 760 [Civ Ct, NY County 1979].) The defendant breached his express and his implied warranty of merchantability and implied warranty of serviceability under Vehicle and Traffic Law § 417 by selling a vehicle that had: (1) a used and patched muffler system that was leaking and in need of repair, rather than a new muffler; (2) defective left front wheel bearings and defective left rear wheel bearings; and (3) a defective left front CV axle (plaintiff’s exhibit 2). The defendant also breached his express and implied warranties by failing and refusing to repair the vehicle.[5] As a result of the defendant’s breach of his express and implied warranties, the plaintiff incurred expenses when she purchased parts including a front and rear wheel bearing and hub assembly; a CV axle shaft assembly for the front left; a muffler, pipes and resonator; and an oxygen sensor. Since the plaintiff failed to provide proof of the cost of labor to install these parts, this court cannot grant an amount for the labor to install these parts. In addition, there was no proof that the oxygen sensor was defective and, as a result, the cost of the oxygen sensor of $89.99 is deducted from the plaintiffs claim for the total cost of the parts of $909.94. The total amount of the proven costs of parts to repair the defects of this vehicle, therefore, is $819.95. Based on the foregoing, the court finds judgment in favor of the plaintiff and against the defendant in the amount of $819.95, together with statutory prejudgment interest thereon in the amount of $33.76 (CPLR 5001 [a], [b]), together with taxable costs and disbursements of $26, for a total judgment of $879.71 and the plaintiff shall have execution thereon. . While both the plaintiff and defendant made statements or arguments during cross-examination or as closing arguments, these statements and arguments do not constitute evidence in the case and, as a result, were not considered as evidence in this case. . Ms. Prime asserted that the defendant was prevented from repairing the car when the plaintiff failed or refused to return the car for repairs, but this assertion was credibly contradicted by Mrs. Cumo’s testimony. . Contrary to the defendant’s assertions, defense exhibits A and B do not demonstrate that putting gas in a 2007 VW Jetta with the engine running will cause the vehicle to stall and the check engine light to turn on. . The plaintiff failed to present any evidence or testimony to demonstrate that the oxygen sensor was defective or needed repair. . Contrary to Ms. Prime’s testimony, the plaintiff did not refuse to bring the vehicle back to their home to have the repairs made. Instead, the defendant stated that he would not pay for the repairs and refused to take Mrs. Cu-mo’s calls about repairing the vehicle.